UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------- x
TRUSTEES of the SHEET METAL WORKERS' :
NATIONAL PENSION FUND, TRUSTEES of the :
NATIONAL ENERGY MANAGEMENT INSTITUTE :
COMMITTEE for the SHEET METAL AND AIR :
CONDITIONING INDUSTRY, TRUSTEES of the :
SHEET METAL OCCUPATIONAL HEALTH INSTITUTE :
TRUST, TRUSTEES of the INTERNATIONAL       :   **ORDER**
TRAINING INSTITUTE for the SHEET METAL :   14 Civ. 5503(KAM)(SMG)
AND AIR CONDITIONING INDUSTRY, and THE :
TRUSTEES of the NATIONAL STABILIZATION :
AGREEMENT of the SHEET METAL INDUSTRY :
FUND,                                      :
                                           :
                 Plaintiffs,               :
                                           :
          -against-                        :
                                           :
STEEL & DUCT FABRICATION, INC., and JAMES :
MIKHAIL, as an individual,                 :
                                           :
                 Defendants.               :
----------------------------------------- x
**Matsumoto, United States District Judge**

        On September 19, 2014, plaintiffs Trustees of the

Sheet Metal Workers' National Pension Fund, Trustees of the

National Energy Management Institute Committee for the Sheet

Metal and Air Conditioning Industry, Trustees of the Sheet Metal

Occupational Health Institute Trust, Trustees of the

International Training Institute for the Sheet Metal and Air

Conditioning Industry, and Trustees of the National

Stabilization Agreement of the Sheet Metal Industry Fund

(collectively, "plaintiffs" or "Trustees") commenced this action

against defendants Steel & Duct Fabrication, Inc. (the

1

"Corporate defendant") and James Mikhail (collectively,

"defendants") pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et

seq.*, seeking an audit of defendants' books and records as well

as payment of delinquent fringe benefit contributions, interest,

liquidated damages, attorneys' fees and costs owed by defendants

under the Collective Bargaining Agreements for the years 2005 to

2014 ("CBAs") and related Agreements and Declarations of Trust

("Trust Agreements").  Plaintiffs allege that defendants have

failed and refused to pay plaintiffs the amounts owed in

violation of the relevant CBAs and Trust Agreements, and that

"[p]laintiffs are wholly ignorant of the amounts of money held

by defendants except that defendants have failed and refused to

account to plaintiffs also in violation of the terms of the CBAs

and Trust Agreements, and Section 515 of ERISA, 29 U.S.C.

§ 1145."  (ECF No. 12, Amended Complaint ("Amend. Compl.")

¶¶ 29-39.)

Currently pending is plaintiffs' discovery demand that

defendants make available for an audit their books and records

in order to determine the amount of contributions owed to the

plaintiffs, on behalf of their participants, for the period

January 1, 2008 through April 30, 2014, pursuant to 29 U.S.C. §§

1132(g), 1145.  For the following reasons, plaintiffs' request

is granted.

## BACKGROUND

Plaintiffs are the trustees of five multi-employer
benefit plans: (1) Sheet Metal Workers' National Pension Fund;
(2) National Energy Management Institute Committee for the Sheet
Metal and Air Conditioning Industry; (3) Sheet Metal
Occupational Health Institute Trust; (4) International Training
Institute for the Sheet Metal and Air Conditioning Industry; and
(5) National Stabilization Agreement of the Sheet Metal Industry
Fund (collectively, the "Benefit Funds"). (Amend. Compl. ¶ 1.)
The Corporate defendant, Steel & Duct Fabrication, Inc., is an
employer within the meaning of Section 3(5) of ERISA, 29 U.S.C.
§ 1002(5), that entered into collective bargaining agreements
with the Sheet Metal Workers' International Association Local
Union No. 28 ("Local Union No. 28") for the period August 1,
2005 to July 31, 2014, to which plaintiffs are third-party
beneficiaries. (Amend. Compl. at 4.) Defendant James Mikhail
is a principal owner of the Corporate defendant and exercises
control over the activities and operations of the Corporate
defendant. (Amend. Compl. ¶¶ 17-18.)

Pursuant to the CBAs, defendants are required to make
contributions to the Benefit Funds on behalf of all "employees
engaged in the manufacture, fabrication, assembly, erection,
installation, dismantling, reconditioning, adjustment,

3

alteration, repairing and servicing of all sheet metal work or
any and all substitute material on the job sites within the City
of New York." (Plaintiffs' Opening Letter, dated March 25, 2015
("Pls. Ltr.") Exs. B-D, Art. I, Sect. 1.)

On September 19, 2014, plaintiffs commenced this
action against defendants alleging breaches of fiduciary
obligations in violation of Section 515 of the ERISA, 29 U.S.C.
§§ 1132 et seq., 1145, and the governing CBAs and Trust
Agreements. (ECF No. 1, Complaint ("Compl.") Upon consent,
plaintiffs amended their complaint on November 24, 2014. (ECF
No. 12, Amend. Compl.; ECF No. 13, 11/26/14 Minute Entry.)
Specifically, plaintiffs contend that the Corporate defendant
"has failed and refused and continues to refuse to pay the
amounts owed to said plaintiff[s] in breach of the terms of the
Agreement and Declaration of Trust" and under ERISA. (Amend.
Compl. ¶¶ 30-39.) Plaintiffs also claim that defendants have
refused to allow plaintiffs to "audit such books and records to
determine the amount of contributions owed to the Benefit Funds
on behalf of its participants for the period of January 1, 2008
through April 30, 2014." (Amend. Compl. ¶ 27.) Plaintiffs
allege that "[n]otwithstanding such demands defendants have
failed and refused to furnish to the plaintiffs said information
and reports and to make available by audit all books and records
of all defendants' 'trades and businesses (whether or not

incorporated) which are under common control' of the

defendants." (Amend. Compl. ¶ 28.) Plaintiffs demand that the

defendants "furnish to the [plaintiffs] by audit, such books and

records that will enable the employee benefit plans to determine

the amount of contributions owed to said plans on behalf of

participants of the plans employed by the defendants." (Amend.

Compl. ¶¶ 46-51.)

The parties commenced discovery in November 2014 under

the supervision of Chief Magistrate Judge Steven M. Gold. On

February 2, 2015, at the direction of Judge Gold, the parties

filed a joint status report indicating that the parties were

unable to continue discovery without court intervention because

defendants refused to permit an audit for the requested time

period, January 1, 2008 through April 30, 2014, stating that

plaintiffs had previously conducted prior audits for some

portion of this time period. (ECF No. 16, 2/2/15 Joint Status

Report.) After a pre-motion conference before this court, the

court directed the parties to submit letter motions indicating

their respective positions regarding the audit. Both parties

submitted their letter briefs on March 25, 2015, and submitted

replies on March 31, 2015 and April 1, 2015. (ECF Nos. 22,

"Pls. Ltr.", 23, Defendants' Opening Letter dated March 25, 2015

("Defs. Ltr."), 24, Plaintiffs' Reply Letter dated April 1, 2015

("Pls. Reply"), 25, Defendants' Reply Letter dated March 31,

2015 ("Defs. Reply").)

**DISCUSSION**

**A.    The Parties' Arguments**

Plaintiffs seek an Order requiring defendants to

comply with the CBAs, Trust Agreements, and ERISA by furnishing

for a "directed" audit defendant-employers' books and records

for the period January 1, 2008 through April 30, 2014. (Amend.

Compl. at 26-29; Pls. Ltr. at 1.).[1] Plaintiffs have previously

conducted two "random" audits of defendants' books and records

for the periods January 1, 2008 through December 31, 2010 and

January 1, 2011 through May 31, 2013. (Pls. Ltr. at 2.)  In

their letter dated March 31, 2015, defendants state that they

have no objections to the audit of its records for the period

June 1, 2013 through the present, as plaintiffs have not

conducted an audit for this time period. (Defs. Reply Ltr. at

1.)  Defendants, however, object to the second audit for the

time periods for which plaintiffs have already conducted an

audit – January 1, 2008 through May 31, 2013. (*Id.*)

First, defendants argue that the court lacks the

authority to interpret the parties' collective bargaining

---

[1] Plaintiffs seek an "Accounting and Audit" from defendants in their Amended
Complaint and request that defendants "furnish to the Benefit Funds by audit,
such books and records that will enable the employee benefit plans to
determine the amount of contributions owed." (Amend. Compl., Seventh Claim
for Relief.

agreement because the interpretation of the agreement is subject
to arbitration. (Defs. Ltr. at 1-2.) Second, defendants argue
that, even if the dispute were properly before this court, the
CBAs and Trust Agreements only provide for a *single* audit, and
not multiple audits, for the same time periods. (*Id.* at 2-5.)
Moreover, defendants assert that as a result of the first audits
conducted for the period January 1, 2008 through May 31, 2013,
defendants owed and subsequently paid delinquent contributions.
(Affidavit of James Mikhail in Support of Defendants' Motion to
Preclude a Second Audit ("Mikhail Aff.") ¶ 5.)

        Plaintiffs argue that the CBAs place no limit on the
number of audits the Trustees may conduct. (*Id.* at 2-3.)
Plaintiffs cite to language in the CBAs that "[t]he Trustees
shall have the authority to have their auditor or an independent
Certified Public Accountant audit the payroll and wage records
of the Employer for the purpose of determining the accuracy of
contributions made to the Pension Fund." (*Id.* at 2 (citing Pls.
Ltr. Exs B-D, Art. XII(B), Sect. 21(D).) Plaintiffs also
contend that the relevant Trust Agreements, which are
incorporated by reference into the CBAs, and attached as
Exhibits E, F, G, H, and I to their March 25, 2015 Letter,
provide in sum and substance that the Trustees have the
authority to conduct an audit at any time to verify or assure
the accuracy of the Employer's compliance with the CBA and

applicable laws.  (*See* Pls. Ltr. Ex. E, Art. V, Sect. 3; Ex. F, Art. V, Sect. 6(c), Art. VII, Sect. 6; Ex. G, Art. V, Sect. 5(f), Art. VII, Sect. 6; Ex. H, Art. V, Sect. 5; Ex. I, Art. V, Sect. 6(c), Art. VII, Sect. 6.)

Plaintiffs contend that, although two "random" audits were conducted, they seek a "directed audit" "to look more closely into the books and records of the employer in order to ascertain if there is an 'alter ego' status." (Pls. Ltr. at 2; Declaration of Cari Greene ("Greene Decl.") ¶ 9.)  Plaintiffs contend that they have "reason to believe that defendants are operating a non-union 'alter-ego' company and intentionally not contributing to the funds." (Pls. Reply Ltr. at 2; Greene Decl. ¶¶ 6-9, 11.)

Defendants assert that the CBAs and Trust Agreements use the singular term "audit" to describe the rights of the Trust funds to inspect and audit the employer's books and records. (*Id.* at 5 (citing Defs. Ltr. Exs. D-H).)  Moreover, to the extent that the term "audit" is used both in the singular and the plural in the CBAs, defendants contend that the CBAs are ambiguous as to the number of audits permitted and that ordinary principles of contract law require that the court interpret the ambiguity against plaintiffs, as the drafters of the CBAs. (Defs. Ltr. at 2-3.)

Defendants also argue that plaintiffs have not demonstrated a refusal by defendants to allow a second audit of its records. Specifically, defendants contend that plaintiffs failed to allege that defendants owe unpaid contributions for the audit period in question and that, in any event, any minor unpaid contributions were already paid by defendants when discrepancies were uncovered in the first set of audits. (Defs. Ltr. at 3-4.) Furthermore, defendants contend that plaintiffs have not established their right to a second audit, nor do plaintiffs set forth any factual information from an individual with personal knowledge that defendants breached either the CBAs or Trust Agreements. (Defs. Ltr. at 4-5.) Rather, defendants claim that plaintiffs seek a second audit in bad faith, motivated "by the termination of an employee," and fueled by revenge for defendant's subsequent refusal to re-hire or hire said employee. (Mikhail Aff. ¶¶ 11-14.) Finally, defendants claim that plaintiffs have not alleged that defendants acted in bad faith during the first audit process, and that a second audit will not only cost the company valuable resources, including manpower and time, but will also be highly disruptive to defendants, who will be required to locate records and work with auditors. (Defs. Reply at 2; Mikhail Aff. ¶ 6.)

Plaintiffs respond to defendants' contentions by asserting that the instant action was commenced to recover

delinquent contributions and to compel defendants to submit to an audit. (Pls. Reply Ltr. at 3.) Plaintiffs further counter that defendants are "wrong when they state that plaintiffs have the 'burden of establishing the right to a second audit.'" (*Id.* at 4.) Finally, plaintiffs contend that a directed audit will not be "highly disruptive" as defendants claim, and indicate that the audit for 2008 through 2010 involved 2 employees, and that the audit for 2011 through May 2013 involved 12 employees. (*Id.*)

## II. The Court's Authority to Interpret The Collective Bargaining Agreement

### A. Legal Standard

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Trustees of Int'l Union of Operating Engineers Local 30 Benefits Funds v. Nyack Hosp.*, 975 F. Supp. 2d 365, 368-69 (S.D.N.Y. 2013) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986)). Thus, "absent an agreement to arbitrate, [the Second Circuit] ha[s] recognized only limited theories upon which [it is] willing to enforce an arbitration agreement against a non-signatory." *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc.,* 357 F.3d 266, 268 (2d Cir. 2004) (per curiam) (quoting *Merrill Lynch Inv. Managers v. Optibase,*

*Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div.*, No. 11-CV-979, 2011 WL 4356373, at *4 (E.D.N.Y. Sept. 16, 2011) ("Employers and fringe benefit funds are not bound by arbitration clauses in collective bargaining agreements to which the funds are not party, absent a manifestation of intent to the contrary.").

Courts "use general contract law principles to determine whether the parties agreed to arbitrate disputes and to ascertain and implement the reasonable expectations of the parties." *Nyack Hosp.*, 975 F. Supp. 2d at 368 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (internal citation omitted)). While a "presumption of arbitrability exists in disputes arising out of a collective bargaining agreement," the presumption "does not extend to the third-party beneficiaries to a collective bargaining agreement, *e.g.,* employer benefit funds." *Nyack Hosp.,* 975 F. Supp. 2d 365, 368 (internal citation omitted); *see also Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 367 (1984) (declining to compel arbitration where benefit fund was third party to collective bargaining agreement and no provision to the contrary indicated agreement to arbitrate between employer and fund); *N.Y. City Dist. Council of Carpenters Pension Fund v. TADCO Constr. Corp.,* No. 07-CV-2712, 2008 WL 540078, at *7 (S.D.N.Y. Feb. 28, 2008) ("The presumption of arbitrability that normally

exists in a dispute between an employer and a union that arises from a collective bargaining agreement does not apply to a dispute between an employer and the trustees of an employee benefit fund, even if the dispute relates to a collective bargaining agreement." (internal citation omitted)).

Under Second Circuit caselaw, non-signatories to a collective bargaining agreement or other contract may be *de facto* parties where a given provision is "essential to [the trustees'] management of the Funds." *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38, 41 (2d Cir. 1996) (noting that non-signatory employers may be bound to trust agreements governing the fund to which they contributed if the given provision in the trust agreement is "essential to [the trustees'] management of the Funds in the same way as is the right to audit"); *New York State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 133-34 (2d Cir. 1996) (holding that under ERISA, the trustees of a benefit fund were entitled to identify and collect delinquent employer contributions through a payroll audit, even though the employer was not a party to the governing trust agreement). Unlike the right to an audit, however, the right to arbitrate a dispute is not "essential to [the trustees'] management of the Funds." *Nyack Hosp.*, 975 F. Supp. 2d at 374 (finding that the right to arbitrate a dispute

over a payroll audit is not "essential to [the trustees']
management of the Funds"); *see also Jaspan*, 80 F. 3d at 41.

**B.   Application**

Defendants argue that the court lacks authority to
interpret the collective bargaining agreements because the
parties are subject to arbitration pursuant to the CBAs.  (Defs.
Ltr. at 1.)  Defendants correctly note that the CBA governing
the time period 2005 through 2009 requires that any dispute
"arising out of or relating to the interpretation or application
of the provisions of [the CBA] shall be settled, adjusted and
disposed of" though informal grievance mechanisms or through
arbitration.  (Pls. Ltr. Ex. B, Art. XVI, Sect. 1.)  The 2009 to
2011 and 2011 to 2014 CBAs provide that "[a]ny and all
complaints, disputes, claims, differences and/or grievances
(*except that delinquent contributions may also be resolved
outside of this procedure by bringing an action in federal court*
or through a motion for administrative expenses/proof of claim
in bankruptcy court) arising out of or relating to the
interpretation or application of the provisions of [the CBA]
shall be settled, adjusted and disposed of" though informal
grievance mechanisms or through arbitration.  (Pls. Ltr. Ex. C,
Art. XVI, Sect. 1; Ex. D, Art. XVII, Sect. 1 (emphasis added).)

Even assuming, *arguendo*, that an action to collect
delinquent contributions and conduct an audit were subject to

arbitration, plaintiffs are neither parties nor signatories to the CBAs, but rather third-party beneficiaries as the Benefit Funds serving the employee unions. Accordingly, plaintiffs are not bound by the requirement to arbitrate disputes arising under the CBA. *Schneider,* 466 U.S. at 367 (benefit fund as third party to CBA was not bound by CBA's arbitration clause where no provision to the contrary indicated agreement to arbitrate between employer and fund); *Dodge Hyundai of Paramus*, 2011 WL 4356373, at *4 (E.D.N.Y. Sept. 16, 2011) ("Employers and fringe benefit funds are not bound by arbitration clauses in collective bargaining agreements to which the funds are not party, absent a manifestation of intent to the contrary."); *MI Installers & Furniture Serv., Inc. v. New York City Dist. Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387, 391 (S.D.N.Y. 2007) (holding that arbitration language referring specifically to the parties to a collective bargaining agreement binds only those parties and not employee benefit funds). Moreover, the 2009 to 2011, and 2011 to 2014 CBAs provide that actions for "delinquent contributions" may be pursued in federal court. (Pls. Ltr. Ex. C, Art. XVI, Sect. 1; Ex. D, Art. XVII, Sect. 1.)

Further, defendants may not rely on the Trust Agreements to compel arbitration. First, the Trust Agreements authorize Trustees to maintain or initiate legal proceedings for the purpose of collecting contributions. The Trust Agreements

14

also provide that the "Trustees . . . are empowered to take whatever steps they deem necessary, including legal action, to collect such delinquent Contributions," (Pls. Ltr. Ex. E, Art. V, Sect. 2(a)), and "shall have the right to maintain any and all actions and legal proceedings necessary for the collection of the Contributions." (Ex. F, Art. V, Sect. 6(c); Ex. G, Art. V, Sect. 6(g); I, Art. V, Sect. 6(d).) Moreover, pursuant to the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, "Trustees may take any action necessary to enforce payment of the Contributions . . . including . . . proceedings at law and equity." (Pls. Ltr. Ex. H, Art. V, Sect. 4(a).)

Second, the present dispute does not fall within the scope of the arbitration clauses contained in the Trust Agreements. *Dodge Hyundai of Paramus*, 2011 WL 4356373, at *3 (noting that, only "[i]f the dispute falls within the arbitration clause, the role of the court ends and the matter is one for arbitration.") (internal citation omitted). The arbitration clauses contained in the Trust Agreements do not mandate arbitration for enforcement actions, nor do they apply to disputes arising between the Trustees and the Employer or any third parties. Rather, the Trust Agreements provide that disputes may be submitted to an arbitrator or impartial umpire for any disputes *among the Trustees* regarding the administration of the Fund. (Pls. Ltr. Ex. E, Art. VIII ("Either the Employer

Trustees or Union Trustees or both may apply to the American Arbitration Association . . . [to] decide any disputes among the Trustees or any other matter submitted to arbitration in accordance with this Trust Document."); Ex. F, Art. XIV ("If the Board of Trustees is unable to agree upon or to settle any of the matters that arise *during the administration of the Fund*. . . the matter shall be promptly submitted to an impartial umpire."); Ex. G Art. XIV (same); Ex. H, Art. VIII ("In the event the Employer Trustees and Union Trustees deadlock *on the administration of the Fund*, the Trustees shall agree upon an impartial umpire to decide such dispute."); Ex. I, Art. XIV (same as Exs. F and G).)[2]

Finally, as non-parties to the Trust Agreements, defendants may not compel arbitration on the grounds that the Trust Agreements allow for arbitration. *Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div*., No. 11-CV-979, 2011 WL 4356373, at *5 (E.D.N.Y. Sept. 16, 2011) (noting that trust agreements do not bind funds to mandatory arbitration). In *Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div*., the court addressed the distinction between cases in which employers seek to compel arbitration versus when trustees seek

---

[2] Additionally, the Sheet Metal Workers' National Pension Fund Trust Agreement provides that any dispute between an Employer and the Plan concerning a determination under ERISA §§ 4201 through 4219, and 4225 must be arbitrated. These provisions pertain to withdrawals by employers from multi-employer plans and have no bearing on the issues in this action. (Pls. Ltr. Ex. E, App. A, Sect. 8.)

to compel arbitration. 2011 WL 4356373, at *5. The court noted that in cases where benefit funds are resisting arbitration initiated by employers, "courts have ruled against compelling arbitration on the grounds that the trust agreements permitting funds to initiate arbitration proceedings did not bind the *funds* to mandatory arbitration initiated by the employers." *Dodge Hyundai*, 2011 WL 4356373, at *5 (emphasis in original); *Div. 1181 Amalgamated Transit Union's New York Employees Pension Fund v. Minibus Serv., Inc.*, No. 08-CV-2910, 2009 WL 605807, at *4 (E.D.N.Y. Mar. 9, 2009) (rejecting defendant's argument that Trust Agreements bound funds to arbitration because where a trust agreement empowers trustees with the discretion to choose between arbitration and instituting a lawsuit, the agreement does not require trustees to arbitrate with the employer). However, "[w]here benefit funds, not employers, initiate arbitration when it is committed to their discretion in a trust agreement, the employer is bound to submit to the arbitration proceeding." *Dodge Hyundai of Paramus*, 2011 WL 4356373, at *5.

Accordingly, because defendants have no authority to compel arbitration under either the CBAs or the Trust Agreements, this court may, and shall, retain jurisdiction to hear the dispute.

## III. Plaintiffs Are Entitled to a Second Audit

### A. Legal Standard

#### i. Contract Interpretation

When a court interprets a CBA, the traditional rules of contract interpretation apply, provided they are consistent with fair labor policies." *Lynch v. Inter-Cnty. Bldg. Materials Corp.*, No. 05-CV-1801, 2013 WL 5652524, at *8 (E.D.N.Y. Oct. 15, 2013) (citing *Sciascia v. Rochdale Village, Inc.,* 851 F. Supp. 2d 460, 474 (E.D.N.Y. 2012)); *see Aeronautical Indus. Dist. Lodge 91 v. United Technologies Corp.,* 230 F.3d 569, 576 (2d Cir. 2000). When resolving contract disputes, the court first examines the language of the contract to determine the parties' intent. *Finkel v. Firequench, Inc.*, No. 09-CV-4310, 2013 WL 1232207, at *2 (E.D.N.Y. Mar. 27, 2013) (citing *Stroll v. Epstein,* 818 F. Supp. 640, 643 (S.D.N.Y. 1993)). If the parties' intent is clearly and unambiguously set forth in the CBAs, the court may end its inquiry. *Id.*

"Whether the contract is ambiguous is a question of law for the court." *Pig Newton, Inc. v. Boards of Directors of Motion Picture Indus. Pension Plan*, No. 13-CV-7312, 2015 WL 996394, at *7 (S.D.N.Y. Mar. 5, 2015) (quoting *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.,* 603 F.3d 169, 180 (2d Cir. 2010)). Ambiguity "is defined in terms of whether a reasonably intelligent person viewing the contract objectively could

interpret the language in more than one way." *Lynch*, 2013 WL 5652524, at *8 (citing *Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008)). No ambiguity exists when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993). "In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" *Lynch*, 2013 WL 5652524, at *8 (quoting *Shaw Grp., Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 121 (2d Cir. 2003) (internal citation omitted).

     i.   <u>Benefit Fund Trustees' Right to an Audit Under ERISA</u>

The Supreme Court has held that a benefit fund trustee has the right to conduct an audit of contributing employers under ERISA. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 569, 571–73, 581 (1985). In *Central States,* the Supreme Court, reviewing the provisions of trust agreements and ERISA's policies, upheld the rights of multiemployer pension fund trustees to conduct random field audits of the records of employees whom an employer

19

contended were not covered by the trust plans. *Id.* at 565–74.
The Court determined that the right to audit is consistent with
the policies underlying ERISA, the trustees' duties under ERISA,
and the "positions of the administrative agencies charged with
the administration of [ERISA]." *Id.* at 573. Thus, the Court
held that an employer who participates in a multiemployer
benefit plan governed by ERISA must allow that plan to conduct
an audit of the employer's personnel records provided that the
documents supporting the trust fund's contractual relationship
with the employer authorize such an audit. *Id.* at 581-82.

 In noting that the "right to audit is crucial," the
Second Circuit explained that trustees have "a fundamental duty
to locate and take control of fund property." *Jaspan v. Glover
Bottled Gas Corp.,* 80 F.3d 38, 41 (2d Cir. 1996); *see also
Boening Bros., Inc.,* 92 F.3d at 130-33. "ERISA clearly assumes
that [Fund] trustees will act to ensure that a plan receives all
funds to which it is entitled, . . . and that trustees will
takes steps to identify all participants and beneficiaries, so
that the trustees can make them aware of their status and rights
under the trust's terms." *Central States,* 472 U.S. at 571.

 The Second Circuit has made clear, however, that a
Fund auditing a contributing employer "is authorized, in
implementation of its fiduciary duties, to conduct an audit that
is no broader in scope than necessary to achieve its objective

and no more extensive than the scope of the trustees'
authority." *Wojciechowski v. Boening Bros., Inc.*, No. 09-CV-
2579, 2012 WL 912968, at *7 (E.D.N.Y. Mar. 16, 2012) (quoting
*Boening,* 92 F.3d at 134).  The Supreme Court in *Central States*
clarified that, "[an] audit request would be illegitimate under
the standard of loyalty if it were actually an effort by plan
trustees to expand plan coverage beyond the class defined in the
plans' terms or to acquire information about the employers to
advance union goals.  [Similarly,] the audit would be imprudent
if it were clearly wasteful of plan assets or unrelated to
legitimate plan concerns."  472 U.S. at 571 n.12.  Thus, a court
may deny an audit where the court finds that the purpose of the
audit is *outside* the scope of the trustees' authority.
*Wojciechowski v. Boening Bros., Inc.,* 2012 WL 912968, at *4-5
(denying plaintiff's request for injunctive relief compelling
the defendant to produce requested payroll records and
disbursement journals for employees who were not covered by the
governing collective bargaining agreement because plaintiffs
failed to show that the requested records and journals would
help identify employees for whom Funds contributions should have
been made but were not).

    **B.  Application**

       ERISA section 502(a)(3) authorizes the trustees of a
benefit fund to bring an action "to enjoin any act or practice

which violates . . . the terms of the plan, or [ ] to obtain

other appropriate equitable relief (i) to redress such violation

or (ii) to enforce any provision of . . . the terms of the

plan." 29 U.S.C. § 1132(a)(3); *see Ferrara,* 2013 WL 1233114, at

*6, *report and recommendation adopted*, 2013 WL 1233537.

The parties do not dispute that defendants are party

to the relevant CBA and Trust Agreements, and that the

plaintiffs, as trustees to the employee benefit plans, have the

authority to enforce provisions of the CBA and Trust Agreements,

including the right to an audit of defendant's records.  The

only issue in contention is whether the relevant agreements and

supporting legal authority entitle plaintiffs to the "directed"

audit for periods that have already been audited.

As an initial matter, defendants argue that plaintiffs

do not specifically allege that defendants have not complied

with its obligations under the CBA and fail to allege that

defendants have withheld or failed to disclose any documents, or

otherwise acted in bad faith, during the first audit process.

(Defs. Ltr. at 4.)  Defendants' reliance on *Cement & Concrete*

*Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*

for this proposition is misplaced.  2008 WL 2712314, at *5

(E.D.N.Y. Sept. 13, 2007).  In *Cement & Concrete Workers Dist.*

*Council Welfare Fund v. Azzarone Contracting Corp.*, the court

denied a request for a second audit where plaintiffs had

conducted an initial audit and were seeking payment on unpaid
contributions in amounts based on the initial audit.  2008 WL
2712314, at *5.  With regard to the request for a second audit,
the court found that "plaintiffs [had] not demonstrated a
refusal by defendants to allow a second audit of its records"
and had not alleged that defendants had "failed to comply with
its obligations under the CBA."  *Id.*  Rather, plaintiffs had
only "suggest[ed] that defendants may be responsible for
additional contributions."  *Id.*  Thus, the court concluded that
plaintiffs had not made a specific request for the second audit
in the pending action, but could initiate a separate action for
relief in order to recover additional unpaid contributions.  *Id.*

        Here, the defendants' refusal to submit to an audit
triggered, independent of other legal consequences, plaintiffs'
right to seek and obtain an order ordering defendants to produce
their books and records for an audit.  *Ferrara v. A Star Bus.
Servs. of New York Corp.*, No. 11-CV-5841, 2013 WL 1233114, at *6
(E.D.N.Y. Feb. 26, 2013) *report and recommendation adopted*, 2013
WL 1233537 (E.D.N.Y. Mar. 27, 2013) (granting plaintiffs'
request for an audit as authorized by ERISA and the trust
agreements).  In any event, plaintiffs *have* alleged in their
complaint that defendants failed to make contributions in
accordance with the requirements under the CBA, and that
defendants "failed and refused to furnish the plaintiffs [with]

information and reports and to make available by audit all books and records . . . of the defendants." (Compl. ¶¶ 27-29, 31-39.)[3] Moreover, contrary to defendants' contention, plaintiffs are not required to allege a deficiency in the previous audits, or that defendants acted in bad faith. Rather, as explained below, plaintiffs need only allege that they seek to verify or determine the accuracy of the contributions made by defendants, or another purpose otherwise within the scope of their authority.

The governing Trust Agreements and CBAs, which explicitly grant to the plaintiffs as trustees the authority to audit the Employer in order to determine the accuracy of contributions made to the Benefit Funds, place no limitations on the number of audits that may be requested and conducted for a particular audit period.[4] First, the language in the Trust Agreements indicates that an audit may be demanded at any time

---

[3] Defendants also argue that plaintiffs improperly seek a second audit to fuel a "revenge" for defendants' refusal to rehire an unidentified employee from Local Union No. 28's asserted disagreement with defendant regarding who defendant hires has no bearing on plaintiffs' actions in administering the Benefit Fund. (Pls. Reply Ltr. at 2.) Indeed, plaintiffs are a separate entity from Local Union No. 28, and have no interest in defendants' decision to hire or fire an employee. (*Id.*) Moreover, as trustees, plaintiffs have a fundamental duty to conduct an audit a to determine the accuracy of an employer's fund contributions as authorized by the Trust Agreements and ERISA.

[4] Defendants argue that the language of the CBAs is ambiguous and urge the court to interpret any ambiguities in the CBA against the plaintiffs, as drafters of the CBAs. (Defs. Ltr. at 2 (citing *I.V. Servs. Of Am., Inc. v. Trustees of AM. Consulting Engineers Council Ins. Trust Fund*, 136 F.3d 114, 121-22 (2d Cir. 1998).) Plaintiffs, however, are neither signatories to, nor drafters of, the CBA; rather, they are third-party beneficiaries. Thus, the court declines to construe ambiguities in defendants' favor on that basis.

so long as it is for the purpose of verifying the accuracy of the Employer's contributions to the Benefit Funds. (Pls. Ltr. Exs. F, G, I, Art. VII, Sects. 5-6.) Indeed, the Trust Agreements provide that "[e]ach Employer shall promptly furnish to the Board of Trustees, on demand, any and all records relating to Employer's Employees" and that the trustees "shall have authority at any time to have an audit made by independent certified public account[ants] retained by the Trustees to perform payroll audits of the Employers to determine whether or not the correct amount of Contributions were made." (Pls. Ltr. Ex. F, Art. VII, Sects. 5-6; Ex. G, Art. VII, Sects. 5-6; Ex. I, Art. VII, Sects. 5-6.)

Additionally, the Trust Agreements vest power in the Trustees to conduct audits to assure or verify the accuracy of reports, statements or information submitted by the Employer with respect to Contributions. (Pls. Ltr. Ex. E, Art. V, Sect. 3; Ex. F, Art. V, Sect. 6(c); Ex. G, Art. V, Sect. 6(f); Ex. H, Art. V, Sect. 5; Ex. I, Art V, Sect. 6(c).) Accordingly, pursuant to the Trust Agreements, plaintiffs may request an audit upon any concern as to the accuracy of contributions or related statements, reports, or other information provided by the Employer.

Defendants argue that the consistent use of the term "audit" in the singular "indicates intent to limit the Trustees

to a singular audit of the employers' books and records." (Def.
Ltr. at 4.) The court respectfully disagrees. Irrespective of
specified audit periods, the Trust Agreements do not contemplate
that the Trustees will only conduct a single audit for the
entire duration of the Trust Agreements. Instead, the Trust
Agreements allow for an audit at any time for the purpose of
verifying contributions or information provided by the Employer,
which may be required on more than one occasion. Notably,
defendants have not objected to these two prior audits and even
"welcomes [a third] audit of its books and records" for the time
period that has not yet been audited by plaintiffs. (Defs.
Reply Ltr. at 1.) Thus, because the court does not interpret
the use of term "audit" in the singular to impose a limit on the
number of audits the Trustees may conduct for *different* audit
periods, it will not impose such limitations on multiple audits
for the *same* audit periods, as such a limitation would be
contrary to the intent of the Trust Agreements and ERISA's
objectives.

The CBAs also authorize the Trustees to conduct an
audit or audits and impose no explicit limitations on the number
of audits permitted for a particular audit period.
Specifically, the CBAs grant the Trustees the authority to "have
their auditor or an Independent Certified Public Accountant
audit the payroll and wage records of the Employer for the

purpose of determining the accuracy of contributions made to the
[benefit funds]." (Pls. Ltr. Exs. B-D, Art. XII, Sect. 21(D).)
The 2005 to 2009, and 2009 to 2014 CBAs also provide that "[t]he
Employer shall be required to disclose upon such audits all
payrolls and payroll ledgers, . . . and any other documentation
concerning payment of fringe benefit contributions." (Pls. Ltr.
Exs. C-D, Art. XII, Sect. 18.) Moreover, these CBAs require
that the "books and records of any affiliate . . . or other
related company of the Employer . . . shall also be made
available at all reasonable times for inspection and audits."
(*Id.*) As with the Trust Agreements, the language of the CBAs
makes no reference to multiple audits for the same audit
periods, nor does the language place any limitation on the
number of audits the Trustees may demand.

Again, the court is unpersuaded by defendants'
argument that the use of the term "audit" in the singular
indicates the drafters' intent that only *one*, *single* audit of
defendants' records was contemplated. There is no indication
that the CBAs intended to limit the Trustees to only one audit
during the lifespan of the CBA. In fact, the language in the
CBAs that records and books "shall be made available at
reasonable *times for inspection and audits*" suggests that,
despite the usage of "audit" in the singular, more than one
audit may be demanded. Indeed, defendants do not dispute that,

pursuant to the same CBAs and Trust Agreements, plaintiffs may conduct and, indeed, have conducted, *multiple* audits for *different* audit periods. Moreover, as noted previously, defendants even "welcome[] an audit of its books and records" for the audit period that has not yet been audited by plaintiffs. (Defs. Reply Ltr. at 1.) Accordingly, for the same reason that the court will not read a limitation into the Trust Agreements that is contrary to the Agreements' intent, the court will decline to do so with the CBAs.

Finally, the court is not persuaded by defendants' argument that the CBAs are ambiguous. Although the singular and plural use of the term "audit" is "intermingle[d]" in the CBAs, the court does not find that this intermingling creates an ambiguity regarding the Trustees' authority to audit defendant Employers more than once for a specified audit period. (Defs. Reply Ltr. at 4.) Indeed, as explained herein, the intent of the Agreements is clear.[5]

Accordingly, the court finds that the Trust Agreements and CBAs do not impose a limit on the number audits that plaintiffs may demand for a specified audit period, provided that such audits are conducted within the scope of the Trustees'

---

[5] Notably, the National Stabilization Agreement of the Sheet Metal Industry Trust Fund is illustrative of the trustees' intent with respect to the singular and plural usage of terms and provides that "wherever any words are used in this Trust Agreement in the singular form they shall be construed as though they were also used in the plural form in all situations where they would so apply." (Pls. Ltr. Ex. H, Art. VII, Sect. 5.)

authority and for the purpose of verifying the accuracy of the contributions made by defendants under the CBAs. (Pls. Ltr. Ex. A, Art. 12, Sect. 18.)

The court further finds that a second directed audit of defendant's employment records accords with ERISA principles, which hold trustees responsible for fully informing plan participants of their rights and status under a plan and assuring the financial integrity of a plan "by determining the class of potential benefit claimants and holding employers to the full and prompt fulfillment of their contribution obligations." *Central States*, 472 U.S. at 574. Indeed, the Supreme Court held in *Central States* that "[g]iven Congress' vision of the proper administration of employee benefit plans under ERISA, we have little difficulty holding that the audit requested by [the trustees] is well within the authority of the trustees as outlined in the trust documents." *Central States*, 472 U.S. at 580. Although *Central States* did not address the concept of multiple audits, the same principle applies so long as plaintiffs' "right to demand access to employer records does not reach beyond what is appropriate for the proper administration of the plan." *Id.* at 582 n.23; *see also New York State Teamsters Conference Pension & Ret. Fund v. Boening Bros.*, 891 F. Supp. 81, 85 (N.D.N.Y. 1995) *aff'd,* 92 F.3d 127 (2d Cir. 1996). Here, a second audit by the plaintiffs does not reach

beyond the scope of plaintiffs' authority and constitutes a "prudent action" intended to further the legitimate purposes of the benefit plan. *Central States,* 472 U.S. at 566, 582 (upholding as "prudent" the funds' request to audit the records of all the defendant's employees, including those employees the defendants contend were not covered by the CBAs, because the "[funds'] examination was a 'proper' means of verifying that the employer had accurately determined the class of covered employees").

Finally, plaintiffs have indicated that the first audit for 2008 through 2010 involved 2 employees, and that the second audit for 2011 through May 2013 involved 12 employees. (Pls. Reply Ltr. at 4.) Thus, a second audit would not be a significant imposition or burden because defendants' employees numbered less than twenty as of May 2013 and the audit will not require the retrieval and review of an overwhelming number employee records. Accordingly, the purported burden that defendants claim as a result of these audits does not compel a different conclusion.

## CONCLUSION

For the reasons set forth herein, plaintiffs' request for an audit is granted and defendants are ordered to submit to a second audit for the period from January 1, 2008 through April 30, 2014 within sixty days of the date of this Order.

**SO ORDERED.**

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge

Date: Brooklyn, New York
      August 18, 2015